# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

GAYLA WILKERSON,                    )
                                   )
            Plaintiff,             )
                                   )
vs.                                )     Case No. 1:10CV00188 AGF
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Gayla Wilkerson was not disabled and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or supplemental security income under Title XVI of the Act, *id*. §§ 1381-1384f.  For the reasons set forth below, the decision of the Commissioner shall be affirmed.

Plaintiff, who was born on September 27, 1955, filed her applications for benefits on September 14, 2007, at the age of 52, alleging a disability onset date of January 1, 2006, later amended to February 22, 2006, due to various physical impairments, including diabetes, back pain, and chest pain.  After Plaintiff's application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on May 20, 2009, at which Plaintiff and a vocational expert ("VE") testified.  On December 3, 2009, the ALJ found, based on the

VE's testimony, that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that existed in the national economy, and was thus, not disabled under the Act.  Plaintiff's request for review by the Social Security Administration Council was denied on October 29, 2010.  Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence in the record.  She argues that the ALJ erred in not finding that her combination of impairments met the requirements of an unspecified deemed-disabling impairment listed in the Commissioner's regulations, and erred in assessing her RFC without specifying the basis for the assessment.

**BACKGROUND**

**Work History and Application Forms**

Plaintiff reported that from 1991 to 2006, she worked at various jobs, including machine operator at a factory, clerk/laborer for a construction company, nurse's aide at a nursing home, and home health care giver, with the last job being the job she held most recently and the longest.  (Tr. 166, 186.)  Earning records from 1998 onward show minimal annual earnings, except for 2004 and 2005, when Plaintiff earned approximately $12,500 and $11,500, respectively.  (Tr. 141.)

On her Function Report dated October 11, 2007, Plaintiff wrote that her daily activities consisted of making her bed, getting breakfast, and doing a little housework unless her blood sugar was up.  On a good day, she would do more housework until her

2

back began to hurt and she had to sit down.  She wrote that she lived with her husband and 14-year old daughter and that they helped with laundry and vacuuming.  She had no problem with personal care (dressing, bathing, etc.).  She no longer read or sewed much because of problems with vision.  (Tr. 176-83.)

And on her Disability Report, Plaintiff wrote that her ability to work was limited by back problems, diabetes, vision problems, chest pains, weakness and numbness in her hands, constant headaches, and nausea.   She wrote that at times her blood sugar "shoots up to 200-500" and that she could not even walk straight when that happened.  (Tr. 164-65.)

## Medical Record

On November 23, 2005, Plaintiff was diagnosed with type II diabetes.  It was noted that Plaintiff (who was 5' 3" tall) weighed 204 pounds.  Medical notes from December 2, 2005, state that Plaintiff was "having problems with high blood sugars" and she was started on insulin.  (Tr. 208.)  A chest x-ray taken that same day showed no acute infiltrates or effusions.  Notes from a follow-up visit on January 17, 2006, are largely illegible.  (Tr. 209.)  On March 6, 2007, Plaintiff was seen at a medical clinic complaining of numbness in her left hand and a knot in her left shoulder.

On November 7, 2007, state consulting internist Chul Kim, M.D., examined Plaintiff in connection with her application for disability benefits.  Plaintiff's chief complaints were back problems, diabetes mellitus, and poor vision.  She reported that about 15 years prior, without known injury, she developed lower back pain that became

3

progressively worse, and that after quitting work she was doing much better.  She reported that currently, if she stood for more than ten minutes, walked around a store shopping, or lifted over 15 pounds, she experienced lower back pain.  With respect to her diabetes, Plaintiff told Dr. Kim that her insulin ran out about two months ago and she could not afford to see the doctor with the result that her glucose levels were up.  For the past two years her vision was "extremely bad," but she could not afford to see an eye doctor.

On examination, Plaintiff weighed 185 pounds; had regular heart rhythm; had decreased breath sound, but clear to auscultation and percussion and not in respiratory distress.  There was no significant swelling of her joints or extremities, or limitation to the range of motion in any major joint.  Dr. Kim did detect tenderness of the lower back over the lumbar spine, without paralumbar vertebral muscle spasm.  Plaintiff's gait was stable, she was able to bear full weight on each leg, walk on heels and toes, squat, and get on and off the exam table without significant problems.  Plaintiff's handgrip and fine finger movements were normal and there was no edema in her legs.  Neurological exam was "nonspecific" including sensory, motor, reflex, and muscle mass.  Dr. Kim diagnosed chronic lower back pain with lumbar strain, untreated diabetes (her blood sugar level was 284), poor vision in both eyes, intermittent chest pain (possibly angina), obesity, and chronic bronchitis.  (Tr. 224-27.)

Also on November 9, 2007, a non-medical non-examining state agency counselor completed a physical RFC assessment form, opining that Plaintiff could occasionally lift

4

and/or carry up to 20 pounds, frequently lift and/or carry up to ten pounds, and stand

and/or walk and sit for a total of six hours in an eight-hour work day.  Only minor

postural (e.g., climbing and stooping) and environmental limitations were noted.  (Tr.

230-35.)

Progress notes from the health clinic on March 24, March 28, and May 19, 2008,

and June 12, 2009, are difficult to read.  (Tr. 242-45.)  Meanwhile, on October 6, 2008,

Plaintiff listed her daily medications as aspirin as a blood thinner, two drugs for blood

pressure, one for cholesterol, and one to reduce swelling caused by fluid retention.  (Tr.

154.)

## Evidentiary Hearing of May 20, 2009 (Tr. 27-41)

Plaintiff, who was represented at the hearing by a non-attorney representative,

testified that she was 53 years old with a ninth grade education and vocational training as

a certified nurse's aide.  She reviewed her work history, as well as a copy of a daily log

of her blood sugar levels that she had been keeping since December 2008.  The ALJ

observed that the levels were often high or low, and Plaintiff explained that she was

trying to control them better with diet and insulin.  She testified that due to her diabetes

her vision was sometimes blurry.  She had a driver's license, but did not drive when her

vision was blurry, and in general drove very infrequently due also to back pain.  The ALJ

observed that Plaintiff had shifted around in her chair a few times during the past half

hour, and Plaintiff stated that it was to relieve back pain.  She acknowledged that she was

not currently under any treatment, and had never had any significant treatment, for her

5

back condition.

Plaintiff testified that she could lift up to ten pounds, sit comfortably for about 30 or 40 minutes before needing to stand for a little while.  Besides her back pain, she experienced chest pain and shortness of breath, so that she did not walk around outside "a whole lot."  She stated that she had not yet had to go to the emergency room for her chest pain, but that "it's coming."  She thought her shortness of breath might have resulted from her history of tuberculosis which had weakened her lungs.  Nevertheless, she smoked about a pack and a half of cigarettes a day and was not doing anything to quit.

Plaintiff testified to very limited daily activities, stating that she basically stayed home all the time.  She lived with her 16-year old daughter and husband in small living quarters and they helped with the housework.  She no longer read or watched much TV due to her blurry vision.

The ALJ asked the VE to consider an individual of Plaintiff's age, education, work experience, who could perform the full range of light work as that term is defined in the Commissioner's regulations,[1] except that the person could not perform a job that required

---

[1]   "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of up to ten pounds; and that might require a good deal of walking or standing, sitting most of the time, and some pushing and pulling of arm or leg controls.  Social Security Ruling 83-10, 1983 WL 31251, at *6, elaborates that the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight hour work day, while sitting may occur intermittently during the remaining time; that the lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping; and that many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

high visual acuity on a regular basis, could only occasionally bend, sit, or kneel, and had

to avoid concentrated exposure to extreme temperatures or humidity, fumes, or hazards.

The VE testified that such a person could perform light assembly work that involved

larger parts, and that such jobs existed in significant numbers (approximately 3,000).

The ALJ determined that the record needed to be further developed with regard to

Plaintiff's alleged visual limitations, and ordered a consultative exam by an optometrist.

**Post-Hearing Evidence**

On September 29, 2009, Kenneth Barkett, M.D., performed an ophthalmological

consultative examination that revealed a best corrected vision of 20/50 right eye and

20/40 left eye.  Dr. Barkett diagnosed hyperopia, indicated that Plaintiff was far sighted,

and recommended new glasses.  (Tr. 248-54.)

**ALJ's Decision of December 3, 2009**

The ALJ found that Plaintiff had the severe impairments of diabetes mellitus, a

history of hypertension, hyperopia (farsightedness), bronchitis, and obesity, but that none

of these impairments, separately or in combination, met or medically equaled the severity

criteria of any of the deemed-disabling conditions listed in the Commissioner's

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then found that

Plaintiff had the RFC to perform light work, as defined  by the Commissioner's

regulations,[2] except that she could not balance, climb, stoop, or kneel more than

---

[2]  "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting
no more than 20 pounds at a time with frequent lifting or carrying of up to ten pounds;

occasionally; and she needed to avoid concentrated exposure to extreme cold, heat, humidity, hazards, or pulmonary irritants.[3]

In support of this determination, the ALJ stated that there was no medical evidence of record that corresponded to Plaintiff's alleged onset date of disability, that Plaintiff's daily activities, as presented in her Function Report, were inconsistent with her allegations of disabling limitations.  She was able essentially to live and function independently, perform light household chores, and drive, and to the extent that her activities were restricted, that appeared to be a matter of choice rather than medical prescription, as no physician ever imposed any work-related restrictions.

The ALJ stated further that the objective medical evidence revealed relatively minor clinical signs, symptoms, and findings, and that there was no evidence of record that Plaintiff's prescribed treatments were not generally effective when taken as prescribed, and that her diabetes and hypertension were controllable when compliant with

---

and that might require a good deal of walking or standing, sitting most of the time, and some pushing and pulling of arm or leg controls.  Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6, elaborates that the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight hour work day, while sitting may occur intermittently during the remaining time; that the lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping; and that many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

[3]    The ALJ also noted as "exceptions," that Plaintiff could not lift and carry more than 20 pounds occasionally and ten pounds frequently or stand or walk for more than six hours in an eight-hour workday.  These limitations however are encompassed in the regulations' definition of light work.

prescribed therapy.  The ALJ acknowledged Plaintiff's obesity but found that there was no evidence that this imposed substantial limitations with respect to mobility or stamina or significantly exacerbated her other medical conditions.

The ALJ observed that Plaintiff did not appear in any obvious credible physical discomfort during the evidentiary hearing.  He stated that opinions of the state agency counselor as reported on the November 9, 2007 physical RFC assessment form, reflecting only minor limitations, deserved consideration as the opinion of a lay person knowledgeable in the evaluation of the medical issues in disability claims under the Social Security Act, because they were supported by the objective medical evidence.

The ALJ held that although Plaintiff could not perform her past work, she could, based on the testimony of the VE, perform jobs, such as assembler, that exist in significant numbers in the national economy.

## DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.'"  *Johnson v. Astrue*,  628 F.3d 991, 992 (8th Cir.  2011).  The court "'may not reverse . . . merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citations omitted); *see also Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (explaining that

the concept of substantial evidence allows for the possibility of drawing two inconsistent conclusions, and therefore, embodies a "zone of choice," within which the Commissioner may decide to grant or deny benefits without being subject to reversal by the reviewing court).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If so, benefits are denied.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied.  Otherwise, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work as she performed it or as it is generally performed in the national economy.  If so, the claimant is not disabled.  If she cannot perform her past relevant work, the burden of proof shifts at

10

step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors: age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

## ALJ's Determination that Plaintiff Did Not Have a Listed Impairment

Plaintiff argues that the ALJ erred in not finding at step three of the evaluation process that the combination of Plaintiff's impairments met or medically equaled the requirements of a deemed-disabling impairment listed in the Commissioner's regulations. Plaintiff, however, fails to identify, nor is it clear from the record, which listing she believes she meets. The ALJ applied the correct legal standard and properly explained his reasons for finding no disability at step three. Plaintiff's argument for reversal on this point fails. *See Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995) (to prevail at step three, a claimant must present medical findings equal in severity to *all* of the criteria for a listed impairment).

## ALJ's Assessment of Plaintiff's RFC

Plaintiff's argument that the ALJ's RFC assessment was flawed is also unspecific. Nevertheless, the Court has reviewed the entire record and concludes that substantial evidence support the ALJ's RFC findings. A disability claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In McCoy v. Schweiker, 683 F.2d 1138 (8th Cir. 1982) (en banc), the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and

11

stressful conditions in which real people work in the real world." Id. at 1147. The ALJ's

determination of an individual's RFC should be "based on all the evidence in the record,

including 'the medical records, observations of treating physicians and others, and an

individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019,

1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

The ALJ is therefore required to consider at least some supporting evidence from a

medical professional on the claimant's ability to function in the workplace. *Cox v.*

*Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th

Cir. 2001)). The absence, however, of an explicit reference to "work" in close proximity

to the description of the claimant's medically evaluated limitations does not make it

impossible for the ALJ to ascertain the claimant's work-related limitations from that

evaluation; such explicit language is unnecessary where the medical evaluation describes

the claimant's functional limitations "with sufficient generalized clarity to allow for an

understanding of how those limitations function in a work environment." *Id.* n.6; *see also*

*Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

Here the ALJ applied the correct standard, considered each of Plaintiff's severe

impairments singly and in combination, and assessed an RFC that is supported by the

medical record, specifically, Dr. Kim's November 7, 2007 evaluation of Plaintiff

following an examination. The ALJ relied on valid factors in assessing Plaintiff's

credibility including his own observations at the hearing. "While the ALJ's observations

cannot be the sole basis for his decision, it is not an error to include his observations as

one of several factors." <u>Lamp v. Astrue</u>, 531 F.3d 629, (8th Cir. 2008); <u>Flynn v. Astrue</u>, 513 F.3d 788, 794 (8th Cir. 2008) (noting that a valid consideration in determining the plaintiff's physical RFC was ALJ's observation that the plaintiff was able to sit through the one-hour hearing).

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of February, 2012.

13